**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MATTHEW J. DUPLEASIS,**

**Plaintiff,**

**v.** **Case No. 25-CV-495**

**DR. MARCELO CASTILLO,**

**Defendant.**

---

# DECISION AND ORDER ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Matthew J. Dupleasis, who is incarcerated and representing himself, sues Dr. Marcelo Castillo under 42 U.S.C. § 1983, alleging that Dr. Castillo refused to provide him his mental health medication in violation of the Eighth Amendment. Dr. Castillo filed a motion summary judgment, which is fully briefed and ready for resolution. (Docket # 21.) For the reasons stated below, Dr. Castillo's motion for summary judgment is granted and the case is dismissed.

## PRELIMINARY MATTER

Dr. Castillo asserts that Dupleasis failed to follow Fed. R. Civ. P. 56 and Civil Local Rule 56 when responding to his motion for summary judgment by failing to properly dispute his proposed findings of fact. (Docket # 31 at 2.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Dupleasis' response does not formally conform to the rules, it contains sufficient information for the court to rule on Dr. Castillo's summary

judgment motion. The court notes Dupleasis submitted a declaration, and Dupleasis invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert it into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Dupleasis' submissions where appropriate in deciding Dr. Castillo's motion.

## FACTS

The facts are largely undisputed. Dupleasis is an inmate in the custody of the Wisconsin Department of Corrections ("DOC") who was housed at the Waupun Correctional Institution ("Waupun") from December 21, 2021, to August 21, 2023; the Wisconsin Resource Center ("WRC") from August 21, 2023, to November 18, 2024; the Racine Correctional Institution ("Racine") from November 18, 2024, to April 15, 2025; the Dodge Correctional Institution ("Dodge") from April 15, 2025, to April 16, 2025; and the Oshkosh Correctional Institution ("Oshkosh") from April 16, 2025, to the present. (Def.'s Proposed Findings of Fact in Supp. of Summ. J. ("DPFOF") ¶¶ 1–2, Docket # 23.)

At all times relevant, Dr. Marcelo Castillo was employed by the DOC as a Psychiatric Medical Consultant at Racine. (*Id.* ¶ 3.)

*Dupleasis' Time at the WRC*

In March of 2023, while Dupleasis was housed at Waupun, he was diagnosed with the following conditions: schizophrenia; persistent depressive disorder, with anxious distress; cannabis use disorder, moderate, in early remission in a controlled environment; and stimulant use disorder, moderate, in early remission in a controlled environment. (*Id.* ¶ 33.) Dupleasis was transferred to the WRC on August 21, 2023, for "symptom

management and mental health education" to "learn how to manage and understand his symptoms." (*Id.* ¶¶ 34–35.) While at the WRC, Dupleasis was evaluated by psychiatrist Dr. George Monese and psychiatric resident Fatema Al-Wahshi. (DPFOF ¶ 36; Declaration of Marcelo Castillo ("Castillo Decl." ¶ 34, Docket # 26.) Dupleasis told Dr. Monese and Al-Wahshi that he began experiencing auditory hallucinations and paranoia around June 2022, at which time he was also engaging in daily polysubstance abuse, including methamphetamine, marijuana, K2, and cocaine. (DPFOF ¶ 38.) Dupleasis further stated that he stopped using those substances around September 2022 but the auditory hallucinations persisted. (*Id.* ¶ 39.) Because it was unclear whether Dupleasis' symptoms could be attributed to either a primary psychiatric condition or to substance use, Dr. Monese diagnosed Dupleasis with an unspecified psychotic disorder and placed him on 5 mg of olanzapine per day. (*Id.* ¶¶ 40–42.) Olanzapine (Zyprexa) is typically prescribed to patients to treat schizophrenia and bipolar I disorder and must be taken adherently on a daily basis to be effective. (Castillo Decl. ¶¶ 54–55.)

On August 30, 2023, Dupleasis went to the WRC's Health Services Unit ("HSU"), "where he requested to discontinue his prescription of olanzapine. He requested to try a new medication." (DPFOF ¶ 43.) On September 26, 2023, Dupleasis was again examined by Dr. Monese and Al-Wahshi, and his medication was switched from olanzapine to 5-10 mg of olanzapine-samidorphan (Lybalvi), another antipsychotic medication. (DPFOF ¶ 44; Castillo Decl. ¶ 55.)

On April 5, 2024, Dupleasis treated with Mark Melendes, a psychologist. (DPFOF ¶ 45.) Dupleasis admitted to misusing another patient's medication at WRC. (*Id.*) On April 21, 2024, the HSU received a health services request ("HSR") from Dupleasis requesting

that his "psych medication" be discontinued. (*Id.* ¶ 46.) On July 2, 2024, Dupleasis treated with psychiatrist Dr. Wilbur Sarino; Dupleasis told Dr. Sarino that he was diagnosed with schizophrenia in December 2022 while at Waupun and that he believed his schizophrenia was "drug-induced." (Declaration of Ashley Fard ("Fard Decl.") ¶ 6, Ex. 1002 at 77–78, Docket # 24-2.) On July 7, 2024, Dupleasis began refusing to take his Lybalvi. (DPFOF ¶ 48.) On July 15, 2024, Dupleasis was examined in the HSU after he submitted an HSR requesting to stop Lybalvi "because he did not think that he needed it and thought he was 'misdiagnosed.'" (*Id.* ¶ 50.) On July 21, 2024, resident psychiatrist Julie George-Grosskopf opined that Dupleasis' past psychiatric history was consistent with substance-induced psychosis and his psychotropic medications were discontinued. (*Id.* ¶ 51.) Dupleasis did not take any psychotropic medications from September through November 2024, and remained stable. (*Id.* ¶ 52.)

On November 13, 2024, Dupleasis was again examined by Dr. Sarino. (*Id.* ¶ 53.) Dupleasis "denied any perceptual disturbances or abnormal thoughts to suggest psychosis." (*Id.*) Dr. Sarino also determined that Dupleasis' past psychiatric history "seemed consistent with substance induced psychosis rather than true schizophrenia spectrum disorder." (*Id.*) Dr. Sarino noted that if Dupleasis remained stable for six months after discontinuing psychotropic medications, he would change his diagnosis to "substance-induced psychosis." (*Id.*) Dupleasis was discharged from WRC on November 13, 2024. (Docket # 24-2 at 2.) When he was discharged, he was not prescribed any psychotropic or psychiatric medications. (DPFOF ¶ 54.)

*Dupleasis' Time at Racine—Interactions with Dr. Castillo*

Dupleasis was subsequently transferred to Racine on November 18, 2024. (*Id.* ¶ 2.) On November 20, 2024, he met with forensic psychologist Dr. Nicollete Mebust, who reviewed Dupleasis' relevant medical history, including his previous schizophrenia diagnosis. (*Id.* ¶ 55.) During this visit, Dupleasis "denied having auditory or visual hallucinations." (*Id.* ¶ 56.) Dr. Mebust noted that "Dupleasis was alert and oriented to person, place, time, and purpose of contact; his thought process was linear and his memory for remote and recent events appeared intact." (*Id.* ¶ 57.) She also noted "that Dupleasis did not appear to be responding to internal stimuli." (*Id.*) She further noted that his WRC discharge paperwork indicated "that his treatment team no longer supported a diagnosis of schizophrenia because he did not exhibit nor did he report symptoms consistent with schizophrenia and his treatment team believed his psychosis was due to substance use occurring at the time." (*Id.* ¶ 58.) Dr. Mebust wrote in Dupleasis' medical file "that should Dupleasis continue to remain asymptomatic and without psychotropic medication, that his diagnosis should be removed." (*Id.* ¶ 59.) Dupleasis states that at this appointment, he "was feeling paranoid and like people was [sic] out to get him and asked about getting his medications back." (Pl.'s Resp. to DPFOF ¶ 59, Docket # 29.)

Dupleasis states that he was supposed to meet with Dr. Castillo on December 6, 2024; however, Dupleasis did not show up for the appointment. (*Id.* ¶ 60.) Regardless, Dr. Castillo reviewed Dupleasis' medical records, specifically noting that Dupleasis was released from WRC without any prescriptions for psychiatric medications. (DPFOF ¶¶ 61–62.) Dr. Castillo also noted that while Dupleasis' record showed a prior diagnosis of

schizophrenia, "that diagnosis was ultimately amended to that of a much lesser diagnosis of a history of substance induced psychosis." (*Id.* ¶ 63.)

Dupleasis met with Dr. Castillo for the first time on December 18, 2024. (*Id.* ¶ 65.) The meeting was brief, however, as Dupleasis ended the appointment after only a few minutes. (*Id.*) During that brief appointment, Dupleasis insisted that he had schizophrenia and demanded psychiatric medications, stating that he was actively hallucinating and was paranoid. (*Id.* ¶ 66.) Dr. Castillo told Dupleasis that based on his medical records from WRC, there was no evidence of a major mental illness. (*Id.* ¶ 67.)

In response, Dupleasis threatened to file "an ICI" against Dr. Castillo. (*Id.*) During this short encounter, although Dupleasis insisted that he was paranoid and hearing voices, Dr. Castillo observed no obvious abnormalities indicating schizophrenia, such as hallucinations, delusions, disorganized thoughts/speech, and odd/unusual/inappropriate behavior. (*Id.* ¶¶ 68–71.) In his professional opinion, Dr. Castillo believed Dupleasis did not present as someone with schizophrenia. (*Id.* ¶ 72.) In particular, Dr. Castillo noted that Dupleasis "appeared to be invested in getting a diagnosis of schizophrenia—which someone, typically, with schizophrenia would not seek." (*Id.* ¶ 76.) As such, Dr. Castillo refused to provide Dupleasis with medication at that visit because he needed "to conduct [his] own evaluation via regular appointments to determine if [Dupleasis] needed psychotropic medications." (*Id.* ¶ 77.)

Dupleasis met with Dr. Castillo again on January 15, 2025. (*Id.* ¶ 80.) He told Dr. Castillo that he was doing "badly" and claimed that Dr. Castillo did not want to talk to him despite him being a schizophrenic in need of medication. (*Id.* ¶ 82.) Dupleasis again insisted he had schizophrenia and stated that his psychologist said that he should be on medication.

(*Id.* ¶ 83.) Dupleasis reported that since arriving at Racine, he experienced auditory hallucinations and symptoms Dr. Castillo described as "ideas/delusions of reference." (*Id.* ¶¶ 84, 88.) Despite Dupleasis' insistence that he was diagnosed with schizophrenia at the WRC, Dr. Castillo found no such diagnosis. (*Id.* ¶ 85.) Further, upon Dr. Castillo's review of Dupleasis' records at the time and his own evaluation of Dupleasis, Dr. Castillo found no reason to endorse a schizophrenia diagnosis. (*Id.*) Further, despite Dupleasis' self-reporting of symptoms, Dr. Castillo "found that his presentation was not congruent with an individual with major mental illness, specifically his self-reported schizophrenia." (*Id.* ¶ 89.) Dr. Castillo also noted that there could be several reasons for Dupleasis' self-reported symptoms, including if he had started using unprescribed medications or other drugs. (*Id.* ¶ 92.)

That same day, Linda Kosterman, a supervising officer at Racine, received a telephone call from Dupleasis' sister, Sarah Torres. (Declaration of Brian Banach ("Banach Decl.") ¶ 5, Ex. 1001, Docket # 25-1.) Torres asked staff to listen to Dupleasis' last telephone call as she feared her brother was either under the influence or having a mental break with reality. (Docket # 25-1 at 2.) Kosterman directed Officer Gonzales to speak with Dupleasis and Dupleasis stated that he was trying to talk to the Psychological Services Unit ("PSU") about some issues but was not suicidal. (*Id.*)

Kosterman then received a call from Dupleasis' mother expressing concern that Dupleasis was suicidal. (*Id.*) Gonzales told Kosterman that he heard Dupleasis tell another inmate that he was having suicidal thoughts; however, when the officer stepped away he denied having such thoughts. (*Id.*) Kosterman then spoke to Dupleasis along with another officer who responded, Officer Brandon Morris, and Dupleasis stated that he was not

suicidal but was trying to get help, as PSU did not believe that he had a mental illness and that his medication needed to be refilled. (*Id.*)

Dupleasis stated that he was from the WRC and had experienced paranoia and auditory hallucinations. (*Id.*) Kosterman again asked Dupleasis whether he was having suicidal thoughts and why he made those comments and Dupleasis stated he was not suicidal. (*Id.*) Kosterman called the on-call PSU doctor, who placed Dupleasis on observation status and stated she would follow-up with Dupleasis in the morning. (*Id.* at 2–3.) No further incident occurred. (*Id.*) Dupleasis refused to attend his final psychiatry appointment with Dr. Castillo on February 13, 2025. (*Id.* ¶ 96.)

*Dupleasis' Time at Oshkosh*

Dupleasis was transferred to Oshkosh on April 16, 2025. (DPFOF ¶ 2.) During a cell search on April 22, 2025, Dupleasis was found in possession of K2. (*Id.* ¶ 97.) K2 is an "illicit, Schedule I controlled substance" categorized "alongside drugs like heroin and LSD because it possesses a high potential for abuse, lacks any accepted medical use, and cannot be safely utilized under medical supervision." (Castillo Decl. ¶ 36.) Dupleasis was scheduled for an inpatient appointment on May 6, 2025, to begin psychological services and assessments to rule out schizophrenia and other psychotic disorders. (DPFOF ¶ 98.) APNP Kristin Murphy determined that Dupleasis had an "other or unspecified stimulant use disorder, moderate, in early remission" and requested a four-week follow-up appointment to rule out schizophrenia or other psychotic disorders. (*Id.* ¶ 99.) APNP Murphy prescribed Dupleasis with lurasidone—an atypical antipsychotic medication primarily prescribed to treat schizophrenia and depressive episodes associated with bipolar I disorder. (*Id.* ¶ 100.)

On September 30, 2025, a "consideration of schizophrenia was discontinued" and Dupleasis' documented diagnosis was substance induced psychotic disorder. (*Id.* ¶ 101.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Dupleasis asserts that Dr. Castillo violated his Eighth Amendment rights by refusing to provide him with psychiatric medication, causing his mental health to deteriorate to the point of becoming suicidal. A prison official violates the Eighth Amendment where he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate a claim of deliberate indifference to medical needs, "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). A plaintiff must also demonstrate "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id.*

No reasonable factfinder could conclude that Dr. Castillo was deliberately indifferent by failing to prescribe Dupleasis psychiatric medication. As to treatment decisions, a medical professional is entitled to deference unless "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (internal quotation and citation omitted). "Disagreement between a prisoner

and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment "unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Id.* And a treatment decision that is based on professional judgment "by definition" cannot evince deliberate inference "because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016). As such, "a doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment." *Id.*

Dupleasis presents no evidence that Dr. Castillo's decision was outside the realm of accepted professional standards. At most, Dupleasis argues that Dr. Castillo was wrong when he determined that Dupleasis displayed no signs of schizophrenia. But the only evidence Dupleasis offers in support of this argument is his own belief, and while Dupleasis is entitled to all reasonable inferences in his favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion. *Herzog v. Graphic Packing Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014).

The undisputed facts demonstrate that Dr. Castillo reviewed Dupleasis' medical records and was aware that the doctors at the WRC amended Dupleasis' initial diagnosis of schizophrenia to substance induced psychosis. (DPFOF ¶ 63.) He was also aware that the WRC had discontinued, at Dupleasis' request, Dupleasis' psychiatric medications. The

undisputed record further demonstrates that Dr. Castillo based his decision on his own observations, determining that Dupleasis was not exhibiting any signs of schizophrenia. In other words, the undisputed facts show that Dr. Castillo's decision not to provide Dupleasis with psychiatric medication was squarely within the bounds of sound professional judgment. The court must then defer to Dr. Castillo's expertise. Summary judgment is granted in his favor.

## CONCLUSION

For the foregoing reasons, Dr. Castillo's motion for summary judgment is granted. Dr. Castillo also argues that he is entitled to qualified immunity. Because the court found in his favor on the merits, however, this argument need not be addressed. As there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Dr. Castillo's motion for summary judgment (Docket # 21) is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Fed. R. Civ. P. 59(e) or ask for relief from judgment under Fed. R. Civ. P. 60(b). Any motion under Fed. R. Civ. P. 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Fed. R. Civ. P. 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 24th day of November, 2026.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge